UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRISTON SMITH, )
 )
    Plaintiff, )
 )
v. ) No.: 3:21-CV-81-KAC-JEM
 )
CORRECTIONAL OFFICER BESTMAN, )
CORRECTIONAL OFFICER SEEMUS, )
UNIT MANAGER BRANDON )
ROBINSON, and )
STATE OF TENNESSEE )
 )
 )
    Defendants. )

## **MEMORANDUM & ORDER**

Pro Se Plaintiff Briston Smith, an inmate in the custody of the Tennessee Department of Correction, filed an amended complaint[1] alleging Defendants violated 42 U.S.C. § 1983 and State law in failing to protect him from harm at the Morgan County Correctional Facility ("MCCX") [Doc. 20]. Because Plaintiff is incarcerated, the Prison Litigation Reform Act ("PLRA") requires the Court to screen his complaint to determine whether he has stated a justiciable claim. *See* 28

---

[1] In the "Memorandum & Order" entered on September 29, 2021 [Doc. 17], the Court directed Plaintiff to file an amended complaint identifying the specific individual officer(s) alleged to have violated his constitutional rights and succinctly setting forth the facts supporting his claims [*Id.* at 6]. The Court notified Plaintiff that the amended complaint would serve as the operative complaint, superseding any prior allegations [*Id.*]. Plaintiff filed two separate amended complaints [Docs. 20, 21]. Of the two pleadings, the earlier-docketed amended complaint [Doc. 20] most closely follows the Court's instructions and is the later-in-time submission according to the postmarks on the envelopes bearing the documents [*See* Docs. 20 at 24, 21 at 17 (dated prior to the Court's September 29, 2021 Order)]. Further, Plaintiff did not seek leave to file "Plaintiffs First Amended Complaint" [Doc. 21]. *See Berndt v. State of Tenn.*, 796 F.3d 879, 882 (6th Cir. 1986). Accordingly, "Plaintiff[']s Amended Complaint" [Doc. 20] is the operative complaint in this action.

U.S.C. § 1915A. Upon screening Plaintiff's amended complaint in accordance with the PLRA, the Court finds this action should be dismissed.

I. BACKGROUND

In his amended complaint, Plaintiff alleges that on or about December 1, 2020, Plaintiff was stabbed by fellow inmate, Earl Johnson, in Unit 24 Alpha Pod, a high security housing unit at MCCX [Doc. 20 at 7-10]. Plaintiff states that all inmates in Unit 24 Alpha Pod "are confined to individual cells for 23 hours a day" because they "are considered dangerous and [pose a] high risk for violence" [*Id*. at 11-12]. As alleged in the amended complaint, inmates in Unit 24 Alpha Pod attend classes for one hour each day [*Id*. at 9]. Before an inmate is removed from his cell to attend the class, he is "shackled, handcuffed, and searched for contraband" [*Id*.]. The inmate is then "escorted by two correctional officers . . . to a individual steel desk" and again restrained in a manner that renders the inmate "immobile, and incapable of making contact with other inmates, while attending the class" [*Id.*].

Plaintiff contends that on December 1, 2020, Plaintiff was removed from his cell and secured to his personal desk without incident [*Id.* at 10]. After escorting two other inmates, Defendants Officers Bestman and Seemus escorted Inmate Johnson—who "had previously been caught with knives in his cell while in segregation of the maximum housing security unit" [*id*. at 13]—from his cell to attend the one-hour class [*Id.* at 10]. Plaintiff alleges that Inmate Johnson "pushed the Defendants Bestman and Seemus out of his way, proceeding past his seat, and [past] two other Inmates . . . before reaching Plaintiff[']s area" [*Id*.]. Plaintiff states that Inmate Johnson "then pulled a homemade knife from his pants and stabbed Plaintiff once in the forehead, and again in his shoulder" [*id*.] before "being subdued by the defendants" [*Id.* at 16]. Plaintiff alleges that it was "impossible for him to protect himself" because he was restrained "during the duration of the

2

stabbing" [*Id*. at 10]. Plaintiff asserts that Defendants Bestman and Seemus should have but failed to (1) "take extra precaution when dealing with Inmate Johnson," (2) find "the weapon on [Inmate] Johnson['s] person during the mandatory search," and (3) "subdue Inmate Johnson before he made contact with the plaintiff" [*Id*. at 13].

Plaintiff was "taken to medical immediately following the attack where he was bandaged up" [*Id*. at 11]. Plaintiff also alleges that Defendant Brandon Robinson, the unit manager, "was called to the incident where he documented the Plaintiff's wounds" and "investigated the stabbing"; "[h]e was also responsible for Plaintiff . . . receiving medical attention" [*Id.*]. But, Plaintiff asserts that his requests for medical treatment after he was initially treated were denied, "due to the coronavirus [and] shortness of staff" [*Id.*].

Plaintiff also filed a grievance after the December 1, 2020 event, and that grievance was purportedly dismissed without a hearing [*Id*. at 15]. Plaintiff does not state any facts about the contents of that grievance or how the grievance specifically relates to the other facts in his amended complaint.

Plaintiff filed suit under 42 U.S.C. § 1983 and State law [Doc. 20], asserting eight (8) causes of action against Defendants. ***First***, Plaintiff alleges Defendants Bestman and Seemus, in their individual capacities, violated Plaintiff's rights under the Eighth Amendment when they "failed to protect him from [Inmate] Johnson" and "failed to intervene and stop" Inmate Johnson [*See id.* at 14-17 (Counts One through Three)]. ***Second***, Plaintiff alleges Defendants Robinson, Bestman, and Seemus, in their individual capacities, violated Plaintiff's rights under the Fourteenth Amendment when Plaintiff's grievance "was dismissed without a hearing" [*See id.* at 15 (Count One)]. ***Third,*** Plaintiff alleges Defendant Robinson, in his individual capacity, "personally caused plaintiff's injury" when he failed to adequately supervise and/or train his subordinates [*See id.* at

3

17-18 (Count Four).  **Third**, Plaintiff alleges that the State of Tennessee and its Department of Correction ("TDOC"), had a "policy, custom[,] or practice" that "[was] the moving force behind the Constitutional violations suffered by [P]laintiff . . . as alleged herein" [*see id.* at 18-19 (Count 5)].  **Finally**, Plaintiff alleges claims of negligence under State law against "Defendant State of Tennessee" [*Id.* at 20-22 (Counts Six through Eight)].  By way of relief, Plaintiff seeks up to $1 million in compensatory damages, $800,000 in punitive damages, and all "other and further relief as appears just and proper" [*Id.* at 22-23].

## II.  LEGAL STANDARDS

### A.  PLRA Screening Standards

Under the PLRA, a district court must *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief."  *See* 28 U.S.C. § 1915A(b); *see also Randolph v. Campbell*, 25 F. App'x 261, 263 (6th Cir. 2001) (stating PLRA screening procedures apply even if plaintiff pays entire filing fee).  "[T]he dismissal standard articulated" by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1)] because the relevant statutory language tracks the language in [Federal Rule of Civil Procedure] 12(b)(6)."  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  Thus, to survive initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the

4

Constitution and laws." 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

The Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and "hold [them] to [a] less stringent standard[] than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery, however, are not well-pled and do not state a plausible claim. *Id.* Further, "formulaic [and conclusory] recitations of the elements of a . . . claim," which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

### B. Applicable Section 1983 Law

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). The Court "begins by identifying the specific constitutional right," or rights, Plaintiff alleges were violated. *Id.* at 394 (citations omitted). Here, Plaintiff alleges Defendants violated (1) his Eighth Amendment right "to be free from cruel and unusual punishment" [Doc. 20 at 15; *see also id.* at 16-17], and (2) his Fourteenth Amendment right to "due process" when Plaintiff's "grievance was dismissed without a hearing" [*Id.* at 15].

The Eighth Amendment's "prohibition of 'cruel and unusual punishments,' . . . imposes duties on [prison official], who must provide humane conditions of confinement; prison officials

5

must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (collecting cases) (cleaned up). But, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

Rather, "a prison official may be held liable under the Eighth Amendment" for his or her **failure to protect** an inmate "only if he knows that inmate[] face[s] a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it." *Id*. at 837. More specifically, "[f]or a claim . . . based on failure to prevent harm," (1) "the inmate must show that he is incarcerated under conditions positing a substantial risk of serious harm" and (2) "the prison official must have acted with 'deliberate indifference' to inmate health or safety." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (cleaned up) (quoting *Farmer*, 511 U.S. at 834, 838). This is otherwise known as the "deliberate indifference standard." *Id.*

Additionally, a plaintiff may also bring a Section 1983 failure to protect claim against a supervising officer. *See Crawford*, 15 F.4th at 761. To prevail on a **supervisory liability** claim, a plaintiff must show: (1) "active involvement by the supervisor [and (2)] causation." *Id.* More specifically, "[t]o succeed on a supervisory liability claim, a plaintiff must [first] show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (cleaned up) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020)). This requires plaintiff to "plausibly allege that a supervisory defendant 'authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . of his subordinates through the execution of his job function.'" *Id.* (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)). Second, plaintiff must also show "a

6

'sufficient link between the [supervising officer's] conduct and the plaintiff's injuries.'" *Id.* (quoting *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019)).

### III. ANALYSIS

#### A. Defendants Bestman and Seemus

The Court first screens Plaintiff's claims against Defendants Bestman and Seemus (Counts One, Two, and Three), liberally construing Plaintiff's amended complaint [Doc. 20]. Plaintiff alleges Defendants Bestman and Seemus, in their individual capacities, violated Plaintiff's rights under the Eighth Amendment when they "failed to protect him from [Inmate] Johnson" and "failed to intervene and stop" Inmate Johnson [*See id.* at 14-17 (Counts 1 through 3)]. Plaintiff also alleges Defendants Bestman and Seemus, in their individual capacities, violated Plaintiff's rights under the Fourteenth Amendment when Plaintiff's grievance "was dismissed without a hearing" [*See id.* at 15 (Count 1)].[2]

As to the "failure to protect" claim, Plaintiff has not alleged that Defendants Bestman and Seemus acted with "'deliberate indifference' to [Plaintiff's] safety." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (cleaned up) (quoting *Farmer*, 511 U.S. at 834, 838). First, Plaintiff asserts that Inmate Johnson "was searched and 'cleared' of weapons by both officers" [Doc. 20 at 10]. Plaintiff does not state any facts alleging Defendants Bestman and Seemus failed to search

---

[2] To the extent Plaintiff may have sought to assert a separate claim against Defendants Bestman, Seemus, and Robinson that he was denied adequate medical care, "[a]fter the initial treatment of his stab wounds," when "no other medical attention[] or follow up was provided" [Doc. 20 at 11], he has failed to state a claim. A prisoner claiming the deprivation of adequate medical care must allege (1) a sufficiently serious medical need (2) which the official actively knew of and disregarded. *Farmer*, 511 U.S. at 834-837. By his own estimation, Plaintiff received immediate care following his injury, and his subsequent requests were deemed not to involve serious needs. Plaintiff does not set forth any facts from which the Court could infer his wounds were more than superficial and required subsequent follow-up care [*Id.* at 11]. Accordingly, the Court finds Plaintiff has failed to state a claim of deliberate indifference to his serious medical needs, and this claim will be **DISMISSED**.

Inmate Johnson prior to removing him from his cell. To the extent Plaintiff's claim depends on an assertion that Defendants failed to follow TDOC or MCCX policy in searching or transporting Inmate Johnson, the Court notes that institutional policies do not create constitutionally protectable liberty interests, and therefore, failing to follow those policies does not, by itself, raise an issue of constitutional significance. *See Laney v. Farley*, 501 F.3d 577, 580-81 n.2 (6th Cir. 2007); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Second, Plaintiff states that Inmate Johnson, once in the same room as Plaintiff, "pushed the Defendants[,] Bestman and Seemus[,] out of his way," [*Id.* at 10], and "got two swings with his homemade knife before being subdued by the defendants" [*Id.* at 16]. Plaintiff does not allege any facts that would indicate Defendants Bestman and Seemus showed "deliberate indifference" during their search of Inmate Johnson. In addition, Plaintiff has not plead sufficient specific facts to suggest that there was any opportunity after Inmate Johnson pushed passed Defendants to intervene before Inmate Johnson made physical contact with Plaintiff. Lastly, Plaintiff states that "[t]his attack could've been way worse" and suggests that Defendants Bestman and Seemus did not linger in terminating Inmate Johnson's attack [*Id.*]. While harm to Plaintiff was not ultimately avoided, these allegations are insufficient to state a constitutional claim for deliberate indifference against Defendants.

As to the Fourteenth Amendment claim, Plaintiff alleges Defendants Bestman and Seemus, in their individual capacities, violated Plaintiff's rights under the Fourteenth Amendment when Plaintiff's ambiguous "Grievance was dismissed without a hearing" [*See id.* at 15 (Count 1)]. Plaintiff has failed to plead sufficient facts to state a cognizable claim against these defendants. Plaintiff has not asserted any facts related to the contents of his grievance or the circumstances of

8

that process. As pled, the Court is without sufficient information to evaluate the merits of this claim. As such, Plaintiff has failed to sufficiently state a claim on this ground.

Accordingly, Plaintiff has failed to state any cognizable claim against Defendants Bestman and Seemus, and Plaintiffs claims against these defendants will be **DISMISSED**.

### B. Defendant Robinson

Liberally construing Plaintiff's amended complaint [Doc. 20], the Court next considers whether Defendant Robinson may be individually liable for the wrongs alleged (Counts One and Four). Plaintiff does not allege that Defendant Robinson either encouraged or personally participated in the events that gave rise to or occurred on December 1, 2020. Rather, all facts alleged against Defendant Robinson relate to either his investigatory actions after Plaintiff was injured or his supervisory role as manager.

As to the supervisory liability claim (Count Four), Plaintiff has not pled sufficient facts to show "a 'sufficient link between the [supervising officer's] conduct and [Plaintiff's] injuries.'" *See Crawford*, 15 F.4th at 762 (quoting *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019)). Additionally, to the extent Plaintiff asserts that Defendant Robinson violated his Fourteenth Amendment due process right "when the Plaintiff['s] . . . Grievance was dismissed without a hearing," Plaintiff has failed to plead sufficient specific facts to state a plausible claims against Defendant Robinson as discussed above [Doc. 20 at 15 (Count One)].[3] Accordingly, Plaintiff has failed to assert a cognizable claim against Defendant Robinson in his individual capacity. Therefore, Defendant Robinson, in his individual capacity, is **DISMISSED** from this case.

---

[3] The Court previously gave Plaintiff leave to amend his complaint to allege any specific facts that would support a claim. However, Plaintiff has not pled any additional facts as to this claim [*See* Doc. 20].

### C. State of Tennessee

Finally, Plaintiff contends that Tennessee and TDOC caused the violations alleged due to their "customs, policies, usages, practices, procedures[,] and rules" and are liable under state law for negligence [Doc. 20 at 18-19 (Count Five), 20-24 (Counts Six through Eight)]. However, states and their subdivisions are not "persons" as contemplated by Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. Aug. 22, 2006) (holding TDOC is not a "person" within meaning of Section 1983). As such, neither Tennessee nor TDOC is an entity subject to suit in this 1983 action. Moreover, the Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). This immunity extends to claims for injunctive and equitable relief. *See Lawson v. Shelby Cnty.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory[,] or monetary relief."). The State of Tennessee has not waived its immunity to suit under Section 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986); *Burton v. Durnin*, No. 3:11-CV-429, 2012 WL 946747, at *8 (E.D. Tenn. Mar. 20, 2012) (concluding that the "[S]tate of Tennessee has not consented to being sued in federal court for tort claims brought under state law"). Accordingly, Plaintiff cannot maintain suit against the State of Tennessee and TDOC, and all claims against them will be **DISMISSED**.

Plaintiff also purports to hold the "State of Tennessee" or "Morgan County Correctional Facility" liable for negligence under the laws of the State of Tennessee. Inasmuch as there are no surviving federal claims in this action against those Defendants, the Court declines to exert

10

supplemental jurisdiction over the remaining issues. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ("State rather than federal courts are the appropriate institutions to enforce state rules"). Therefore, the Court **DISMISSES** Plaintiff's state law claims without prejudice. *See* 28 U.S.C. § 1367(c).

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff has failed to state a claim upon which relief may be granted under Section 1983, and the Court **DISMISSES** this action under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A;

2. The Court **DISMISSES** all state-law claims **without prejudice**; and

3. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

**SO ORDERED**.

**ENTER:**

 s/Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge